**KAKU NAGANO v. CLARK,**
Attorney General.
No. 47 C 1830.

United States District Court
N. D. Illinois, E. D.

March 16, 1950.

898

C. Lysle Smith, Chicago, Ill., for plaintiff.

Otto Kerner, Jr., United States Attorney, Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is a companion case to Shinsaku Nagano v. Clark, D.C., 85 F.Supp. 368, in which this court held that Skinsaku Nagano, husband of the plaintiff herein, could not recover 8,780 shares of stock in the Fuji Trading Company which on the books of the corporation had stood in the name of Kaku Nagano, a Japanese national living in Japan, and which had been vested by the Alien Property Custodian in 1943 as the property of a national of a designated enemy country. In the present case, Kaku Nagano brings suit under Section 9(a) of the Trading with the Enemy Act, 50 U.S.C.A. Appendix, § 9(a), to recover these shares.

The defendant has moved for judgment dismissing the complaint with prejudice on the ground that the plaintiff, as a "resident within" Japan since 1924, except for a visit to the United States in 1932–33, is an enemy as defined in Section 2 of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, § 2, and hence may not maintain an action under Section 9(a) of the act to establish her right, title and interest in said shares of stock; and that the plaintiff, as a Japanese national, is among the class of persons whose property the President has authorized to be vested and she is therefore sufficiently tainted by enemy associations to be barred, under Clark v. Uebersee Finanz-Korporation, 1947, 332 U.S. 480, 68 S. Ct. 174, 92 L.Ed. 88, from maintaining this suit.

The plaintiff's opposition to the present motion is based on several grounds. First, plaintiff contends that she should not properly be regarded as an "enemy" under Section 2 of the act because despite her long stay in Japan, her domicile remained in the United States with her husband. She alleges that her long stay in Japan was not really voluntary but was required by the family necessity of giving her three children a Japanese education and of arranging marriages in the Japanese tradition for her two daughters who had been born in Japan and hence were not citizens of the United States. Second, plaintiff argues that the vesting of the property involved here was wholly outside the purposes of the act, since it bore no relation to the ability of this country or of the enemy to wage war.

With respect to the first ground of her argument, plaintiff contends that enemy nationality and physical presence are only indicia of enemy character, and that since the decision in Clark v. Uebersee Finanz-Korporation, 1947, 332 U.S. 480, 68 S.Ct. 174, 92 L.Ed. 88, held that the Government could show the enemy taint attaching to apparently neutral interests, it follows that one who meets the statutory definition of an enemy may show the lack of any real enemy taint. This argument is a *non-sequitur* and, as I read the Uebersee decision, it directly refutes this argument. In that case, the Supreme Court said that the definitions in Section 2 of the Trading with the Enemy Act are "merely illustrative". 332 U.S. at pages 488–489, 68 S.Ct. 174. Thus it appears clear to me that the meaning of the Uebersee case in this regard is that although the Government may show facts indicating an enemy taint not strictly within the definition of "enemy" in Section 2, facts bring-

ing a party squarely within the statutory definition may not be disregarded. Next, I think that the facts of this case bring the plaintiff squarely within the statutory definition of "enemy", her long residence in Japan making her a "resident within" the territory of an enemy nation, regardless of the possibility that her domicile remained at all times in the United States where her husband presumably had his domicile. Although it has been held that for one to be "resident within" enemy territory, something more than mere physical presence is required, Josephberg v. Markham, 2 Cir., 1945, 152 F.2d 644, I do not think that the alleged family necessity relied on by plaintiff as an explanation for her long stay in Japan is sufficient to bring her within cases which have refused to apply the definition of "enemy" literally because of an element of compulsion, or at least of lack of free will, in the case. In the Josephberg case, supra, the court held that the mental incapacity of the alleged "enemy", a naturalized American citizen, made it impossible to say that his prolonged stay in Italy was voluntary; in Stadtmuller v. Miller, 2 Cir., 1926, 11 F. 2d 732, 45 A.L.R. 895, the court held that a German citizen, a resident of the United States, who in the course of traveling for his health entered Germany to settle his parents' estate on his way back to the United States and was prevented by military regulations from leaving Germany, was a "transient" and hence not a "resident within" Germany. On the contrary, the facts alleged by plaintiff herein show that her residence in Japan was deliberate, whatever its motivation.

█ The second ground of the plaintiff's argument is based on the premise that the purpose of a suit under Section 9(a) of the Trading with the Enemy Act is to determine whether the vesting of the plaintiff's property served any purpose of the Act, and that such purpose is either to assist the war effort of the United States, or to hamper the war effort of the enemy. In this connection, plaintiff argues that since the corporation whose stock was involved engaged in the manufacture of food sauces, and since control of the cor-

poration was at all times in the hands of the plaintiff's husband in Chicago, this court should hold that the vesting was erroneous because it had no effect on the war effort of either belligerent. Plaintiff's argument, I think, misconstrues both the general purpose of the Act as a war measure and the purpose of a suit to recover vested property under Section 9(a). The scope of the power to vest alien property under the Act is not limited to property useful as war industries. The purpose of a suit to recover, although a suit in equity, is not to provide judicial review of every aspect of the executive action which vested alien property, but simply to establish a right, title, or interest to the property in one not an enemy or an ally of an enemy. Furthermore, plaintiff's argument that property in friendly hands (i. e., in the hands of plaintiff's husband, a Japanese national resident in the United States) was not intended by Congress to be seized under the Act, if adopted, would virtually destroy the Act, because it is only property in the United States or in territory subject to the jurisdiction of the United States which, as a practical matter, can be seized, and such property will usually, if not always, be in the custody of one at least ostensibly friendly to the United States. It is therefore the enemy ownership of the property which determines whether it can be seized, the attitude of the custodian being immaterial. Obviously, enemy property located in an enemy country would be beyond the effective jurisdiction of the United States to seize; and property present in the United States which is owned by enemy aliens resident in enemy countries will usually, if not always, be in the hands of friendly custodians, since enemy aliens present in the United States and actively hostile to this country would be interned and thus in no position to act as custodians.

█ The defendant has also called the court's attention to Section 12 of the War Claims Act of 1948, Public Law 896, 80th Congress, 2nd Sess., which amends the Trading with the Enemy Act by adding thereto Section 39, 50 U.S.C.A.Appendix, § 39. This section provides that no property or interest therein of Germany and

Japan or of any national of either country vested by any officer or agency of the United States shall be returned to the former owners or their successors and no compensation shall be paid them. The defendant has suggested that this section prevents recovery by the plaintiff herein because she is a national of Japan. I do not think this section is relevant to a case brought under Section 9(a) of the Act. If a plaintiff in a Section 9(a) suit is an enemy or an ally of an enemy, the suit fails under the provisions of Section 9(a), not because of the provisions of the new Section 39. The real purpose of the new Section 39 is indicated by the provision that the net proceeds of property vested under the Act, after administration, liquidation, and disposition pursuant to the provisions of the War Claims Act of 1948, shall be paid into the Treasury, in which, under Section 13(a) of the War Claims Act of 1948, 50 U.S.C.A.Appendix, § 2012(a), there is created a trust fund known as the War Claims Fund consisting of all sums paid into the Treasury pursuant to the provisions of Section 39 of the Trading with the Enemy Act. In connection with other sections of the War Claims Act, these sections reveal a third purpose not mentioned by plaintiff among the reasons for vesting enemy property, namely, the application of enemy assets to the relief of the victims of enemy aggression.

Since the plaintiff is an enemy as defined in Section 2 of the Trading with the Enemy Act, she cannot maintain a suit under Section 9(a) to recover property vested by the Alien Property Custodian. I have reached this conclusion after considerable study and with some reluctance, since it involves the confiscation of a substantial portion of the life work of the plaintiff's husband. It is unfortunate that Congress, in determining the national policy respecting the vesting of enemy property, has not taken into account the fact that because of its prior immigration and naturalization policy, Japanese have not been able to become naturalized citizens and hence are especially vulnerable to the technical definitions under the Trading with the Enemy Act. A naturalized American citizen in the position of the plaintiff herein might have had constitutional protection against the sweeping definition of "enemy" under the Act. Compare Josephberg v. Markham, supra.

The defendant's motion is granted, and this action is accordingly dismissed.